The Court, after taking time to consider, delivered’ the following decree:
Several questions were made for the determination of the Court, upon which instructions might be given to the commissioners for the execution of the writs of partition. ’
It was contended for the representatives of Mrs. Wells, (afterwards Mrs. Elms, and then Mrs. Hughes,) that the deed of gift was a voluntary gift from a husband to a wife, which, without the intervention of a trustee, is a mere nullity and void, or enures immediately to the husband. This was denied, and it was contended that by the- more recent decisions such gifts are' supported in equity.
On examining the decided cases on this point, it appears that in equity such gifts between husband and wife have been often supported, provided the same be not made to the prejudice of creditors, or subsequent bona *159 fide purchasers without notice. See 1 Fonbl. 108 1 Atk. 270, Lucas vs. Lucas, &c. &c.
This deed being thus established, for there are no creditors to be injured in this case, (Mr. Wells having abundance of other property to pay his debts) the ne-groes included in it, became the absolute property of the wife. It was the very object of the deed that they should be a separate property to the wife. On her marriage with. Mr. Elms, he took possession of these negroes, and they became by virtue of the marital rights his property. On his death, intestate, this property became divisible between his widow and his daughters, one third to each. One of the daughters dying in January, 1794, intestate and unmarried, her third devolved upon her mother under the law as it then stood. On the marriage of the mother with Mr. Hughes, she carried her rights to two thirds of the said negroes in marriage to him ; and he might have obtained a writ of partition and had her two third parts allotted, and then, having reduced the same to possession, they would have become his absolute property. This, however, he did not complete. These two thirds still remain undivided from the third part which belongs to Miss Elms. Mr. Hughes claims, however, these two third parts as survivor of his wile. The opinion of the Court will be given upon this point, at a subsequent stage of the decree, in connexion with another part of the property which falls under the same question.
. On the death of Mr. Wells his widow was entitled to one third of his personal estate, exclusive of the four negroes included in the deed of gift. During the marriage of Mr. Elms with her, no partition was made, but her third part remained blended with the rest of the estate, to which the daughter, Miss Wells, was entitled. At that time, too, the debts of the estate of Mr. Wells were not all paid. It was contended, that as Mr. Elms had not obtained a partition, so as to ascertain what part of the personal estate was his wife’s, he could not be said to have reduced this property into possession ; that *160 the possession which he had was as administrator óf Mr; Wells, and he held all the personal estate merely as the representative of Wells, and not in his wife’s right or own ’ an<* kis rights lay in action, for it was absolutely necessary to have a writ of partition to di^.jie es^a^ey jn or¿er to ascertain what should be hrs wife’s; and he dying in his wife’s lifetime, her rights in the property survived to her, and she carried those rights in marriage to Mr .Hughes, who surviving her, they became vested in him.
On the other hand, it was insisted that the right of the wife, to a third part of Mr. Well’s personal estate, was not a chose in action. It was a right to an undivided portion of negroes, actually in possession. That the writ of partition which was necessary, was merely to divide property in possession j and this was totally different from a chose in action.
On considering this question, I am inclined to think, that as Mr. Elms’s possession was merely as administrator ; and as a writ of partition was necessary to divide the personal estate, to enable Mr. Elms to hold his wife’s share as husband; and as, wherever a suit is necessary to establish or to give effect to a right, this is a right in action ; and as Mr. Elms died before his wife ; the right and the possession was not so vested in Mr. Elms, as husband, as to'establish his property in the personal estate, but the same survived to his widow.
This brings us to the third question.' Mr. Hughes, not having obtained, or taken any steps to obtain, a partition of the four negroes and their issue, comprised in the deed of gift, so as to separate his wife’s two third parts therein from the third part to which Miss Elms is entitled ; nor of the personal estate of Matthew Wells, so as to separate his wife’s third part thereof from the two thirds which Miss Wells is entitled to — What interest survives to him on her death ?
As the law stood prior to the act of 1791, for abolishing the rights of primogeniture, there could not have been any doubt but that Mr. Hughes would have taken *161 the property in question. Since the passage of that act different opinions have prevailed. In the case of Peyre and Jervey, it was decided in this Court, that the act of 179.1 did not intrench on the maiital rights, and that the husband surviving his wife took her property though not reduced to possession, either as survivor or under bis exclusive right to administer without account. In another case, that of Speight and others, decided at law, a contrary opinion prevailed, and the act of 1791 was considered as interposing and giving the wife’s property llot reduced to possession among her husband and her children. This question came before me, in the case of administrator of Byrne vs. administratrix of Stewart, and upon considering the act of 1791 it did appear to meto apply to. and govern this question, and I decided accordingly. As I gave my reasons for that opinion in the decree which I then gave, and that case was carried up to the Court of Anpeals at my request, and is now pending there, I will "how only say that I adhere to that opinion; consequently, that the property in question is divisible into three parts: one of which must go to Mr. Hughes, one to Miss Wells, and one to Miss Elms, the two daughters of Mrs. Hughes. But I recommend that this case may also be carried up to the Court of Appeals that this contested question may receive a solemn adjudication.
The act of ba-ritai rights, property not ,tc> possession by the husband listl'lbuta“
From this decree an appeal was made, on the following grounds:
1. That before the passing of the primogeniture act, a husband was jure mariti entitled to the whole personal estate of his wife; that it was a vested interest, subject to be defeated, in the event of the wife’s surviving the husband, and by his not having reduced the personal .state into actual possession, and being absolute and transmissible in the event of his being the survivor.
2. That it was not the true intent and meaning of the provisions made in the primogeniture act, in this respect, to alter or impair the marital rights.
s. Thai the primogeniture act ought riot to be extend-ed by construction so as to impair the marital rights» forasmuch as it doth not alter or diminish the corres-P0Rdent reasons or obligations on which those rights are professedly founded by the law.
Ford» for the appellant.
'On this appeal the counsel argued the case as follows;
Mr. Ford. The statute 29th Chas. 2d, was not introductory of a new law, but relates to an old one; it is declaratory. See 3 Atk. 526, as to the complete right of the husband. 1 P. Wins. 378. The statute of Chas, was one of those which, at the time of forming the constitution, was adopted as the law of the land. The legislature, in passing a law relative to intestate estates, could not have in contemplation a feme covert, who is incapable of making a will: but infants are in the same situation.
The act of primogeniture is affirmative j not to be construed to do away the common law. 6 Bac. 376, on construction. Ibid 383. The law gives the chattels real, Of the wife, to the husband, upon marriage: if the act of primogeniture should he extended, as contended, these would be included and distributed.
Dkattost, for respondent.
The object of the legislature was general; to cany into effect the clause of the constitution. It is not confined to the eldest son alone, but also to every equitable distribution. It evidently extends to women, and places real and personal estate on the same footing. The question is not how or why the clause was introduced : it has in fact been introduced, and that is sufficient. A subsequent statute shall prevail over the common law. Comyn, vol. 1, 323, Tol-ler, 83-4. These authorities .go to shew that the jus mariti was doubtful at common law. . Doubts solved by Toller by referring to statute 29, Car. 2d.
An affirmative statute excludes all matters not incident to or included in it. If there are statutes, pari ma-teria, they may bo taken together but where a single statute, it must be considered singly. In not one of the clauses of the act of distributions is the husband named; and no case mentioned of a feme covert dying intestate. In the act of 1791 it is the reverse : both are named. By ' * the act of 1791 he receives one third of the real estate in fee, to which he was not entitled at common law. The marital rights are taken away and an equivalent granted. By the act of distribution the rights are taken away and no equivalent granted. Instead of transferring the whole property of the wife to the husband, it transfers one third. The act must operate upon something. AH the property in possession vests in the husband. This something must be the property of the wife distributed by the act.
The husband is liable to the wife’s debts only during coverture; while all the property in possession is in him. After her death, for only what lie receives. This is in answer to the objection, « that there was responsibility without the means/’ which is a non sequitur. In the case of Speight & Holloway, at the com. law, the Court has decided that property goes under the act of 1791 $. and in the case of Peyre vs. Jervey, in equity, the contrary. This is conceded. The question here, now is, has he a light to take ? not whether he has a right to administer.
PniNGiE, for Hughes, the appellant,
on the same point. 1 Black. 433-4. Baron may assign dioses in action, and feme will he bound by it. Har. L. T. 475, That the property, jure mariti, vested in him by common law, and the right of administration followed. By statute, administration would have gone to the next of kin. But the common law having given him the right of property, also gave him the means of reducing it into possession. Yin. p. 88. By common lav/, and not by statute, the interest vested in him, and became transmissible to his representatives upon his surviving her. The construction ought to be confined by the object expressed in the preamble. Upon the death of the first husband, would not the share of the wife vest in her, in possession, and the rights of her children vest in them in interest ? If so, the right to choses in action, in the hus-at common law, will by the act also vest in her ch^reib in interest, and the husband will,have no right to dispose of them more than any other personal property without being accountable.
Smith, for appellant,
contends that the act abolishing the rights of primogeniture has no application. Grim-ke’s L. of Execuors, 274, 273. Acts of 22d and 23d, Chas. 2d, are not repealed by the act of 1791. "Decided by lord Macclesfield that the husband should be within the statute as to his interest, but not to his prejudice.” Lord Cowper also decided so. By the act of primogeniture the legislature never intended to interfere with the rights of the husband.- Bay’s reports, 244, Townsend and Bippon. Speights and Holloway in Con. Court. Peyre vs. Thos. H. Jcrvey, 2dvol. 239.
After hearing the arguments, the Corarr, composed of the judges James, Thompson, Desaussuke and Gaieeaed, (Chancellor Ruteedge being recently ... v * dead) were unanimously of opinion, that the decree of the Circuit Court should be affirmed.
[Mr. Ford, sometime after the termination of the case, furnished me with the following note :■ — The decree of the Court is in exact conformity with the case of Baker vs. Hall, 12 Vesey, 497; that possession by the husband, as executor and trustee, is not a reduction into possession of his wife’s share of the residue, entitling him, against her right of survivorship. See also the case of Cape and wife vs. Adams and others, 2d volume of Decrees, p. 101, and Harleston vs. Hamilton.]